STATE OF WEST VIRGINIA *ex rel.* LEE RALICH

*v.*

THOMAS E. MILLSOP, *Mayor, Etc., et al.*

(No. 10563)

Submitted April 14, 1953. Decided July 14, 1953.

600

*Fahey* and *Fahey*, for petitioner.

*Handlan, Garden, Matthews* and *Hess, Carl Franko-vitch, Lester C. Hess*, for respondents.

RILEY, JUDGE:

Invoking the original jurisdiction of this Court, the petitioner, Lee Ralich, has filed a petition in mandamus, praying that he be awarded a writ of mandamus directed to the respondent, Thomas E. Millsop, Mayor of the City of Weirton, and George Rodak, Richard Jackson, Bernard Kelly, Calder A. Lyons, Patsy Standardi, and Glen Ferguson, Councilmen of the City of Weirton, and William Vagnoni, "pretended" Councilman of the City of Weirton, commanding them as mayor and members of the council to recognize petitioner as Councilman for the First Ward of the City of Weirton; and that respondents rescind, cancel and annul their attempted appointment of the respondent Vagnoni, and that the respondent Vagnoni be compelled to vacate his claimed position as a

member of the Council for the First Ward of the City of Weirton.

This Court on February 16, 1953, awarded a rule, returnable on February 24, 1953, but on the return day the case was continued to March 3, 1953. Respondents on the last-mentioned date filed their joint and several answer, to which the petitioner filed a replication; and on April 14, 1953, an "Agreement and Stipulation as to Facts" was filed, and the case was submitted upon the oral arguments and briefs of council for the parties and upon the pleadings and agreement and stipulation as to facts.

From the petition, respondents' joint and several answer, petitioner's replication, and the agreement and stipulation as to facts, it appears that the case was submitted to this Court without any contraverted issues of fact.

At the municipal primary election held in the City of Weirton in May, 1951, the petitioner was nominated by a substantial vote for the office of Councilman for the First Ward of the City of Weirton, and at the general election held in the City of Weirton petitioner was elected as Councilman for the First Ward in the City of Weirton by a substantial vote, having received 69.8 per cent of the votes cast, for a term of four years, beginning July 1, 1951.

As the result of a consolidation and annexation election held on the first day of April, 1947, the former City of "Hollidays Cove", and the municipalities of "Weirton Heights", "Marland Heights", and certain previously unincorporated territory, became the City of Weirton, and by operation of law the Charter of the City of Hollidays Cove, said city having the largest population of the several consolidated municipalities, became the Charter of the City of Weirton. (For the Charter of Hollidays Cove and its amendment, see Acts of the Legislature, (Municipal Charters) 1925, Regular Session, and Acts of the Legislature, Regular Session, 1931.)

Thereafter on April 25, 1950, the legislative charter and amendment were proposed to be amended and revised by submitting a proposed new charter to a vote of the electorate of the municipal corporation, and said election was held, the vote being cast at a special election held on that day. The majority of the votes cast were in favor of said proposed new charter, and the vote was so cast following the canvass thereof by the city council acting as a canvassing board.

The pertinent parts of Section 3, Article III of the Charter of the City of Weirton read: "QUALIFICATIONS OF ELECTIVE OFFICERS. Each candidate for Mayor or Councilman or to remain a Mayor or member of the City Council, shall * * * (F). Not hold any other appointed or elected office in the City or County except as is hereinafter set forth in this charter. * * * "

The City of Weirton lies partially within Butler District of Hancock County, and partially within Cross Creek District of Brooke County. Butler District extends north of the limits of the City of Weirton, and Cross Creek District in Brooke County extends south of the limits of the City of Weirton.

In 1952 the petitioner Ralich was nominated and elected on the Democratic ticket as one of the two Justices of the Peace of Butler District, Hancock County; and, having qualified, he assumed the duties of the office of justice of the peace on January 1, 1953, on which date he began a four-year term of office.

Under Section 1 of Article VI of the Charter of the City of Weirton it is provided that the regular council meetings of that city shall be held "on the first Monday following the first Tuesday of each month"; and an ordinance adopted by the Council of the City of Weirton provides that council meetings shall be held in the council room in the City Building of the said city at seven-thirty o'clock in the evening.

The January, 1953, regular council meeting, which

fell on the twelfth, was postponed, by consent of all of the respondents, except William Vagnoni, until January 14, 1953. At the meeting on the latter date the question was raised as to the claimed disqualification of petitioner under Subsection (F), Section 3, Article III of the Charter of the City of Weirton, to act as councilman, the asserted disqualification being based upon the postulate that petitioner could not hold any other appointive or elective office "in the City or County." Claimant, however, asserted that he had the right to hold both offices, that of Councilman for the First Ward of the City of Weirton and that of one of the Justices of the Peace of Butler District, Hancock County; and in furtherance of this assertion petitioner says that he was allowed to retain his regular seat in the council chamber and participate in the meeting held on January 14, 1953, and on that date he stated that he had authority sustaining his position that he could hold both offices.

Pursuant to an arrangement made by the respondent mayor, Thomas E. Millsop, and all of the members of the Council of the City of Weirton, other than petitioner, a meeting of council was held on January 16, 1953. Of this meeting petitioner had no notice, except such as he may have received through the press; and he was formally given no opportunity to be heard.

At this meeting the Council of the City of Weirton, petitioner not being present, evidently acting on the assumption that petitioner's acceptance and entry into the office of Justice of the Peace for Butler District, served to vacate petitioner's seat in the Council of the City of Weirton, proceeded to accept nominations for petitioner's successor, and William Vagnoni was selected by the members of the council then present to serve in petitioner's place and stead for the remainder of his term.

The petition alleges and the agreement and stipulation as to facts show that the office of Councilman of the City

of Weirton is a "part-time" office, the members of council being required to attend regular meeting of council only once each month and such special meetings as may be called from time to time; and that the office of justice of the peace likewise, at least in petitioner's case, is a "part-time" office, for petitioner asserts that he intends to engage in his regular employment, keeping his office open through the services of a secretary.

The petition herein alleges and the agreement and stipulation as to facts shows that respondents' claim that petitioner became disqualified, after January 1, 1953, to serve as a member of the Council of the City of Weirton is based solely on the provision of Subsection (F) of Section 3 of Article III of the Charter of the City of Weirton, which provides that a councilman shall " * * * Not hold any other appointed or elected office in the City or County except as is hereinafter set forth in this charter."

In their joint and several answer respondents admit that petitioner was duly and properly elected, qualified and assumed the duties of the office of member of the Council of the City of Weirton, and that he continued to hold such office and discharge the duties of that office until the regular meeting of the council held on December 8, 1952.

The agreement and stipulation as to facts sets forth that witnesses for the petitioner and for the respondents would give conflicting testimony, if their testimony had been adduced, on the question whether petitioner had resigned from the office of Councilman for the First Ward of the City of Weirton, or whether having resigned, he had effectively revoked such resignation.

The agreement and stipulation as to facts sets forth in detail the activities of the respondent, Thomas E. Millsop, as president of Weirton Steel Company, a corporation, and as an officer and member of the Board of Directors of National Steel Corporation, a corporation,

of which Weirton Steel Company is a subsidiary, in relation to contracts made with the City of Weirton, in which agreement and stipulation as to facts it is stated that the total of the sums of money periodically paid by the City of Weirton to Weirton Steel Company for labor, services, materials, and supplies from July 1, 1947, to and including June 30, 1951, was in excess of fifteen thousand dollars; and that the aggregate of the sums paid by the City of Weirton to the Weirton Steel Company for such labor, services, materials and supplies between July 1, 1951, and January 16, 1953, was in excess of twenty-four hundred dollars.

From the agreement and stipulation as to facts it appears that the respondent Millsop from July 1, 1947, to and including the time this proceeding was instituted, has been, and is, a stockholder and member of the Board of Directors of the Bank of Weirton, a corporation, and of Peoples Bank of Weirton, a corporation; and the agreement and stipulation as to facts further states that the City of Weirton, through its city clerk, acted as collection agent for both the Bank of Weirton and Peoples Bank of Weirton in the collection of assessment certificates of the City of Weirton for sanitary sewers in the amount of $180,000.00, and of assessment certificates of the City of Weirton for paving improvements, aggregating the sum of $120,000.00, which collections were and are to be made by the City of Weirton without cost to the banking corporations.

The agreement and stipulation as to facts further states that in addition the respondent Millsop receives substantial salary and bonuses as president of Weirton Steel Company, and the respondents, Rodak, Kelly, Lyons, Ferguson and Vagnoni are employed by Weirton Steel Company at substantial salaries.

It seems unnecessary for the purpose of the decision in this case for us to refer in further detail to the agreement and stipulation as to facts, as this case involves only the single question whether under Subsection (F),

Section 3, Article III of the Charter of the City of Weirton, the petitioner is disqualified to retain his office as a member of the Council of the City of Weirton, because of his election and entry into the office of Justice of the Peace of Butler District, Hancock County.

Embraced in this question are the following questions: (a) Is Subsection (F), Section 3, Article III of the Charter of the City of Weirton violative of the West Virginia Constitution; and (b) are the office of a Justice of the Peace for Butler District and the office of member of the Council of the City of Weirton incompatible within the meaning of Subsection (F)?

Council for the petitioner asserts that Subsection (F), Section 3, Article III of the Charter of the City of Weirton is unconstitutional on the ground that as West Virginia Constitution, Article IV, Section 4, and Code, 8-3-9, have provided by general law for the qualification and disqualification of public officers, including members of council of municipal corporations, it is beyond the power of a municipal corporation to superadd or require other or additional qualifications. In support of this proposition petitioner's counsel have cited *City of Richmond* v. *Lynch*, 106 Va. 324, 56 S. E. 139; *Imbrie* v. *Marsh*, 3 N. J. 578, 71 A. 2d 352, 18 A. L. R. 2d 241; 1 Story's Commentaries on the Constitution, Section 625; 1 Cooley on Constitutional Limitations, 140; Mecham on Public Offices and Officers, 164; 62 C. J. S., Municipal Corporations, Section 485; 42 Am. Jur., Public Officers, Section 38. Whether counsel's position is tenable is not for decision in this case, for the instant case involves the question whether Subsection (F), Section 3, Article III of the Charter of the City of Weirton is constitutional, and not whether an ordinance enacted by the Council of the City of Weirton governing the qualification or disqualification of members of the council is unconstitutional. Without question, notwithstanding Section 4, Article IV, West Virginia Constitution, the Legislature by a charter and the voters of a municipal corporation,

under Section 1, Article 2, Chapter 56, Acts of the Legislature, Regular Session, 1937, the Municipal Home Rule Law, by the adoption or amendment of the charter of a municipal corporation, may prescribe the qualifications of municipal officers. Section 4, Article IV, West Virginia Constitution, provides: "No person, except citizens entitled to vote, shall be elected or appointed to any State, county or municipal office; but the Governor and the Judges must have attained the age of thirty, and the Attorney-General and Senators the age of twenty-five years, at the beginning of their respective terms of service; and must have been citizens of the State for five years next preceding their election or appointment, or be citizens at the time this Constitution goes into operation." *State ex rel. Thompson* v. *McAllister, Mayor,* 38 W. Va. 485, 18 S. E. 770; *Kahle* v. *Peters,* 64 W. Va. 400, 62 S. E. 691; *McMillin* v. *Neeley, Mayor,* 66 W. Va. 496, 66 S. E. 635; *Booten* v. *Pinson,* 77 W. Va. 412, 89 S. E. 985; *State ex rel. Downey* v. *Sims,* 125 W. Va. 627, 650, 26 S. E. 2d 161. In the *McAllister* case it was argued that Section 4, Article IV of the West Virginia Constitution, which provides that: "No person, except citizens entitled to vote, shall be elected or appointed to any State, county or municipal office"; Section 5 of Article IV of the West Virginia Constitution, which provides that: "* * * and no other oath, declaration, or test shall be required as a qualification, unless herein otherwise provided"; and Section 8, Article IV, West Virginia Constitution, which provides that the Legislature is empowered to prescribe by general law, "the terms of office, powers, duties and compensation of all public officers and agents, and the manner in which they shall be elected, appointed and removed", by implication inhibit the Legislature from delegating to a municipal corporation the power to prescribe the qualifications or disqualifications of municipal officers. This Court in the *McAllister* case, however, did not accept counsel's view, but held that, notwithstanding Sections 4, 5, and 8 of Article IV of the West Virginia Constitution set forth certain specified qualifications for the

election or appointment of persons to public office, the Legislature was empowered to prescribe qualifications for municipal officers. The immediate question involved in the *McAllister* case was unsettled in this jurisdiction for many years, as is indicated by the strong dissent of Judge Brannon in the *McAllister* case. It was, however, settled once and for all in this jurisdiction by the concurrence of Judge Brannon in the decision in the case of *Kahle* v. *Peters, supra,* and by the case of *McMillin* v. *Neeley, Mayor, supra.* The opinion in the latter case was written by Judge Brannon, and concurred in by the other members of the Court. We are, therefore, of opinion that, notwithstanding Section 4 of Article IV of the West Virginia Constitution, Code, 8-3-9, provides for the qualifications of public officers, including municipal officers, the Legislature did not exceed its constitutional powers in prescribing the qualifications for members of the Council of the City of Hollidays Cove, which later, by virtue of the consolidation of the municipal corporations of Hollidays Cove, Marland Heights, and Weirton Heights, and certain unincorporated communities in April, 1947, became the Charter of the City of Weirton.

The Charter of the City of Weirton, originally the Charter of the City of Hollidays Cove, was effectively revised and amended by the electorate of the City of Weirton at the special election held in May, 1950. Under Section 1, Article 2, Chapter 56, Acts of the Legislature, 1937, the Municipal Home Rule Law, which statute was enacted pursuant to the Municipal Home Rule Amendment, contained in Section 39 (a), Article VI, West Virginia Constitution, the pertinent provision of which reads: "Under such general laws, the electors of each municipal corporation, wherein the population exceeds two thousand, shall have power and authority to frame, adopt and amend the charter of such corporation, or to amend an existing charter thereof, and through its legally constituted authority, may pass laws and ordinances relating to its municipal affairs; * * *."

So under the reasoning of this Court in the *McAllister* case we hold that Subsection (F), Section 3, Article III, providing that each candidate for mayor or councilman or to remain a mayor or councilman of the City of Weirton, shall "Not hold any other appointed or elected office in the City or County except as is hereinafter set forth in this charter", is constitutional.

Subsection (F), Section 3, Article III of the Charter of the City of Weirton, in expressly providing that a member of the Council of the City of Weirton shall " * * * Not hold *any other* appointed or elected office in the City or County except as is hereinafter set forth in this charter" (italics supplied), by strong implication provides that the office of Councilman of the City of Weirton is a public office, and that such councilman shall not hold any other *public office.*

That the offices of councilman of a municipal corporation and that of justice of peace cast upon the incumbent or incumbents thereof duties which involve the exercise of a portion of the sovereign power, in which the public interest is concerned, and that the duties are continuing in their nature, can hardly be gainsaid. The rule is well stated in 15 M. J., Public Officers, Article I, Section 2, as follows: "Generally speaking, a public office is a position created by law with duties cast upon the incumbent which involve an exercise of some portion of sovereign power and in which the public is concerned, continuing in their nature, and not merely occasional or intermittent. Among the criteria for determining whether an employment is a public office or no are: that the powers are created and conferred by law, and not by contract; and the fixing of the duration or term of office. That an official oath is required by law is a sign of office, and where a statute prescribes specific duties for an office there is a strong presumption that an office is intended." See also *Hartigan* v. *Board of Regents,* 49 W. Va. 14, 38 S. E. 698.

Bearing indirectly on the question whether a member

of the council of a municipal corporation is a public officer, see generally, *Wiley* v. *City of Sparta*, 154 Ga. 1, 114 S. E. 45, 50, 25 A. L. R. 1342; *Malinoski* v. *D. S. McGrath, Inc.*, 283 Mass. 1, 186 N. E. 225, 228; *State ex rel. LaCross* v. *Averill*, Tex. Civ. App., 110 S. W. 2d 1173-76; *Hodgman* v. *City of Taunton*, 323 Mass. 79, 80 N. E. 2d 31, 34; *Daddareo* v. *City of Pittsfield*, 301 Mass. 552, 17 N. E. 2d 894, 897; *Commonwealth ex rel. McCreary* v. *Major*, 343 Pa. 355, 22 A. 2d 686, 688. In *Holland* v. *Adams*, 296 Mich. 371, 257 N. W. 841, and *Rupert* v. *Chester Co.*, 13 Pa. Co. Ct. R. 342, 343, a justice of the peace was held to be a public officer. In 3 Kent, Commentaries, 454, a public officer is defined as one who has "the right, and corresponding duty, to execute a public or privileged trust, and to take the emoluments belonging to it."

The office of justice of the peace and that of member of council of a municipal corporation are, in our opinion, public offices. That the office of Councilman of the City of Weirton and that of Justice of the Peace of Butler District, Hancock County, are elective offices, as established by this record, is beyond cavil.

But counsel for petitioner asserts that the office of Justice of the Peace of Butler District, Hancock County, to which petitioner was elected in November, 1952, and which office he assumed on January 1, 1953, is a magisterial office and not a county office; and, therefore, counsel argues that petitioner's assumption of the office of justice of the peace on January 1, 1953, did not serve to vacate his office as a member of the Council of the City of Weirton.

The office of justice of the peace is of ancient origin. About the year 1327 in the reign of Edward III, the office of justice of the peace was first instituted in England. Pt. 1 syl., *Epperty* v. *Holley*, 3 Va. Law Reg. N. S., 27, decided by the Corporation Court of Radford, Virginia, reads: "It seems that the first institution of jus-

tices of the peace was about the year 1327, in the reign of Edward III. Good and lawful men were appointed to maintain and keep the peace by an act of Parliament." For an excellent summary see 11 M.J., Justices, Section 2.

In this jurisdiction the office of justice of the peace is a judicial office, established by the Constitution of West Virginia in Section 27 of Article VIII, which provides that each county shall be laid off into districts, "not less than three nor more than ten in number, and as nearly equal as may be in territory and population"; and that "There shall be elected in each district containing a population not exceeding twelve hundred, one justice of the peace, and if the population exceeds that number, two such justices shall be elected therein." Section 28 of Article VIII of the West Virginia Constitution, provides that: "The jurisdiction of justices of the peace shall extend throughout their county; they shall be conservators of the peace and have such jurisdiction and powers in criminal cases as may be prescribed by law." Code, 50-2-1, prescribes the civil jurisdiction of justices of the peace: "A justice of the peace, within and coextensive with the county in which the district is for which he was elected, shall have civil jurisdiction and authority: * * *." Code, 50-18-1, which prescribes the criminal jurisdiction of a justice of the peace, provides that: "A justice shall have jurisdiction of the following offenses committed in his county, or on any river or creek adjoining thereto: * * *."

In view of the foregoing constitutional and statutory provisions we are of opinion that a justice of the peace is a public officer, whose jurisdiction extends throughout the county in which the district for which he was elected lies; and, therefore, he is a county officer. Applying this postulate to the instant case, the petitioner having assumed, as he had the right to do by reason of his election in November, 1952, the office of Justice of the Peace of Butler District, Hancock County, on January 1, 1953,

he did so in contravention of the inhibitory provisions of Subsection (F), Section 3, Article III of the Charter of the City of Weirton, and *eo instante* his incumbency as a *de jure* member of the Council of the City of Weirton, under Subsection (F), Section 3, Article III of the Charter of the City of Weirton, ceased. 15 M. J., Public Officers, Section 32. In point 11 of the syllabus in *Building & Loan Assn.* v. *Sohn*, 54 W. Va. 101, 46 S. E. 222, this Court held: "One who forfeits his right to an office of which he is the incumbent, by accepting another which is incompatible with it, and afterwards performs the functions of the office forfeited, is an officer, *de facto*, and his acts, done before removal from such office, are valid as to persons other than himself." It thereupon became the right and duty of the Council of the City of Weirton, as it did, under Section 2, Article IV of the Charter of the City of Weirton, to declare the petitioner's office as Councilman of the City of Weirton vacant, and to appoint a qualified person to fill the vacancy. The pertinent provision of Section 2, Article IV of the Charter of the City of Weirton reads: "If a vacancy shall occur in Council during any such term, because of death, resignation, incapacity or other cause or condition, including the election of a member of Council to fill a vacancy in the office of Mayor, the remaining members of Council, by a majority vote, shall elect a qualified person from the proper ward to fill the vacancy. * * *."

As the vacancy in the office of Councilman for the First Ward of the City of Weirton occurred by reason of operation of law, the conflict of fact raised in the agreement and stipulation as to facts, bearing on the question whether petitioner had effectively resigned as a member of the Council of the City of Weirton, or, having resigned, had revoked his resignation, does not enter into the decision of this case.

For these reasons the writ of mandamus prayed for herein is denied.

*Writ denied.*