256 S.E.2d 581 (1979)
Louis MARRA et al.
v.
Mildred ZINK, City Clerk, etc., et al.
No. 14040.
Supreme Court of Appeals of West Virginia.
July 12, 1979.
*583 Jones, Williams, West & Jones, Jerald E. Jones, Clarksburg, for plaintiff in error.
John L. DePolo, Clarksburg, for defendant in error.
*582 NEELY, Justice:
This case concerns the extent to which either the Legislature or a municipal corporation may limit access to elected municipal office by imposing qualifications in excess of those established in W.Va.Const., art. 4 § 4. Here citizens and taxpayers of Clarksburg, West Virginia appeal a circuit court ruling which held unconstitutional a City Charter provision requiring candidates for City Council to be city residents for one year. We affirm.
Appellants filed a mandamus petition in the lower court to compel the respondents, Clarksburg city officials, to declare Mr. Richard O. Ritter ineligible to serve on the City Council because he had not been a Clarksburg resident for one year before his nomination as required by section 5 of the City Charter which says:
Councilmen . . . shall have been residents of the city for at least one year prior to their nomination for the office. . .
On 15 April 1977, Mr. Ritter presented his nomination, paid his filing fee, and filed the following statement:
I . . . certify that I am a qualified voter of the City of Clarksburg and that I have resided therein since August 9, 1976.
On 18 April 1977, the City Council approved the placement of Mr. Ritter's name on the ballot for the 7 June 1977 city election. Mr. Ritter was elected to a four year term; however, the appellants challenged his eligibility to hold the office. The circuit court ruled that the one year residency requirement is unconstitutional and this appeal followed. Since the circuit court's holding was correct on the merits we need not address the question of whether mandamus will lie after an election to challenge eligibility or whether the proper remedy would have been quo warranto. However, in passing, we would point out that the expansion of election mandamus in the last twenty years[1] has been for the purpose of arresting election controversies at an early stage to provide swift resolution before both the candidates and the State or municipalities have incurred expense. Once an election has been held, however, sound public policy dictates that newly elected officials not be vexed by continuing law suits; consequently, the reasons which militate in favor of liberal access to the courts in election matters through election mandamus before an election or immediately after one with regard to the conduct of the election itself, do not apply after the election has been held with regard to general matters which could have been raised before. Nonetheless, as this case presents a question of public importance we shall affirm it on the merits and explore why the lower court was correct.

*584 I
At the outset this Court must squarely confront its holding in State ex rel. Thompson v. McAllister, 38 W.Va. 485, 18 S.E. 770 (1893) in which we held that the West Virginia Legislature under authority of W.Va.Const., art. 4 § 8 and its plenary law making power may create qualifications for a municipal office which are in excess of those set forth in W.Va.Const., art. 4 § 4. W.Va.Const. art. 4 § 4 says:
No persons, except citizens entitled to vote, shall be elected or appointed to any state, county or municipal office; but the governor and judges must have attained the age of thirty, and the attorney general and senators the age of twenty-five years, at the beginning of their respective terms of service; and must have been citizens of the State for five years next preceding their election or appointment, or be citizens at the time this Constitution goes into operation.
Judge Brannon vigorously dissented to the Thompson case, supra and today we adopt his dissenting opinion on the ground that although W.Va.Const., art. 4 § 8 provides authority for the Legislature to establish by general law "terms of office, powers, duties, and compensation of all public officers and agents, and the manner in which they shall be elected . . ." that constitutional section does not provide for the establishment of qualifications. Consequently, today we overrule Thompson v. McAllister, supra and hold that W.Va.Const., art. 4 § 4 is the exclusive constitutional authority for the establishment of qualifications for municipal office and any qualifications in excess of that provision cannot be created by general law under authority of W.Va. Const., art. 4 § 8 nor under the Legislature's plenary law making power.
Immediately the question is raised why W.Va.Const., art. 4 § 4 should be interpreted as being more restrictive or exclusive today than it was in 1893. The answer, of course, is that "it is a constitution which we are expounding," McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 407, 4 L.Ed. 579 (1819), and a constitution should present a comprehensive structure with consistent internal harmony for the organization of government. The law has been moving very rapidly in the direction of removing all unreasonable barriers to elective office through the use of constitutional provisions other than W.Va.Const., art. 4 § 4. Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970); State ex rel. Piccirillo v. City of Follansbee, W.Va., 233 S.E.2d 419 (1977); Mancuso v. Taft, 476 F.2d 187 (1st Cir. 1973); Thompson v. Mellon, 9 Cal.3d 96, 107 Cal.Rptr. 20, 507 P.2d 628 (1973). While as recently as fifteen years ago the reasoning of Thompson v. McAllister, supra which held that the Legislature could create by general law reasonable qualifications for office under their plenary law making authority would generally have been accepted, that is no longer the case under Federal and State equal protection and First Amendment concepts. If qualifications beyond those expressed in W.Va.Const., art. 4 § 4 were permissible under our State Constitution, through Judge Dent's reasoning in Thompson, supra that a State Legislature may do all things not specifically proscribed, we would be forced to evaluate the residency requirement before us under equal protection and First Amendment principles which have traditionally been envisaged as limiting the power of state government. The right to become a candidate for public office is a fundamental right; therefore, any classification which restricts that right must serve a compelling governmental interest, Piccirillo, supra; State ex rel. Maloney v. McCartney, W.Va., 223 S.E.2d 607 (1976).
Municipalities are creatures of the State who draw their powers from the law which creates them; therefore, if a city charter provision conflicts with either our Constitution or our general laws, the provision, being the inferior law, must fail. See Vector Co. v. Board of Zoning Appeals of the City of Martinsburg, 155 W.Va. 362, 184 S.E.2d 301 (1971). The apparent authority for cities' adoption of residency requirements is W.Va.Code, 8-5-11 [1969]:

*585 [A]ny city may by charter provision. . . determine and prescribe . . . the number, method of selection, tenure, qualifications, residency requirements, powers and duties of municipal officers and employees . . ..
Appellees contend that W.Va.Code 8-5-11 [1969] and the City Charter residency requirement are unconstitutional because there is no authority in W.Va.Const., art. 4 § 8 for the imposition of qualifications for municipal office. We agree that W.Va. Const., art. 4 § 8 does not specifically empower the Legislature to create qualifications for office, which leaves the only constitutional qualifications for municipal office to be in W.Va.Const., art. 4 § 4 or to be established under the Legislature's plenary power. It appears to the Court that since the evolution of constitutional law has developed strong First Amendment and equal protection rights to become a candidate for public office this fact alone tends to vindicate Judge Brannon's dissent in Thompson v. McAllister and to cast aspersions upon the legitimacy of the Court's prior liberal interpretation of W.Va.Const., art. 4 § 4 to the effect that by not specifically circumscribing the Legislature's power to establish qualifications, the Legislature could establish greater qualifications at will.
The appellants assert that the one year residency requirement would pass both a First Amendment and equal protection test because it serves a compelling governmental purpose in assuring that candidates are familiar with the city and knowledgeable about local issues. We cannot agree and find support for our own rejection of appellants' argument in the case of Johnson v. Hamilton, 15 Cal.3d 461, 125 Cal.Rptr. 129, 541 P.2d 881 (1975) where the California court persuasively reasoned:
In terms of the education of the candidate, the argument that an extended residence is necessary for an understanding of local issues, while perhaps appealing in the abstract, nonetheless ignores the hard realities bearing on the relationship of candidate and issue. The knowledge, appreciation, and comprehension of the public issues and problems which a candidate. . . possesses . . . are so much the product of the variables of motivation, intelligence, maturity, experience, opportunity, and desire as to make any flat rule of physical residence appear immediately suspect and arbitrary. The congeries of individual capacities for observation, study, exposure, and growth are simply so different as to be inhospitable to a rigid fixed qualification tied to residence.
Similarly, the public's need for education and information about a candidate are [sic] not served by a proscription so imperious as one based upon extended physical presence alone. The advent of mass media . . ., the easy mobility of persons and image, and the increasing use of forums, debates, and voter education programs dilute the expectancy that voter evaluation and education can best be served by an arbitrary residence requirement of the candidate, 125 Cal.Rptr. at 134, 541 P.2d at 886.
The irrationality of a one year residency requirement can be further demonstrated by the facts of the case before us. While according to Mr. Ritter's filed statement he has only resided in Clarksburg since 9 August 1976, he was not a stranger to that city. He was born in Clarksburg in 1941 and resided there until 1964 and again from 1970 until 1975. In 1975, Mr. Ritter moved to 113 Cimarron Road which abuts the Clarksburg city limits and lived there until 9 August 1976 when he moved back into Clarksburg. For at least the last seven years, he has been actively engaged in a Clarksburg business. We are unable to envisage that a one year period of continuous residency is necessary to make Mr. Ritter more familiar with that city than he currently is. Not only would a residency requirement exclude qualified individuals from office it also would exclude for one year everyone in residential areas annexed by the City.
Having discussed the evolving First Amendment and equal protection principles which instruct our understanding *586 of W.Va.Const., art. 4 § 4, we may now return to Judge Brannon's dissent in Thompson v. McAllister, supra where he said:
Having determined the qualifications of voters, it was not to be supposed that it [the Constitution of West Virginia] would omit the very important matter of defining who might be officers. It has not omitted to do so. It makes the one right practically the correlative of the other. To the citizen clothed with the right of suffrage is given also the right of holding office. It should be so, and it is so.
Section 4 of article 4 provides that "no person, except citizens entitled to vote, shall be elected or appointed to any state, county or municipal office; . . .
This does not in affirmative express terms declare that a voter shall be competent to hold office, as does the first section say that all male citizens shall be voters. It could have been better drawn, for present purposes, by declaring that any one who is a voter should be competent to be elected or appointed to office, but the section means that. We must read sections 1 [voter qualifications] and 4 together, as if in pari materia, because they deal with two kindred subjects, and they are located close together. Section 1 has just defined the qualifications of voters. Section 4 takes up the subject of qualifications of officers, and in saying that no person but citizens entitled to vote shall be eligible to office, it, by implicationby strong and plain implicationmeans to declare that a citizen entitled to vote shall likewise, because of his quality of voter, be entitled to be elected or appointed to office. 38 W.Va. at 500-501, 18 S.E. at 775-776.
Obviously Judge Brannon was in advance of his times but he correctly understood that W.Va.Const., art. 4 § 4 envisages no greater qualification for office than that required to enable a person to vote, except for the several high offices mentioned in that section or specific qualifications for other high offices specifically enumerated elsewhere in the Constitution such as qualifications for judges W.Va.Const., art. 8 § 8 or W.Va.Const., art. 4 § 4 concerning the Governor. Furthermore, contrary to the appellants' contention, W.Va.Const., art. 4 § 8 deliberately excludes any mention of qualifications as one of those things to be established by general law with regard to elected officials. In summary, since there is no direct authority in our Constitution for the Legislature to establish qualifications for office in excess of those imposed by W.Va.Const., art. 4 § 4, we find qualifications other than those in art. 4 § 4 unconstitutional by its very terms and under our own equal protection, W.Va.Const., art. 3 § 17; Piccirillo, supra, due process, W.Va. Const., art. 3 § 10; State ex rel. Harris v. Calendine, W.Va., 233 S.E.2d 318 (1977); North v. West Virginia Board of Regents, W.Va., 233 S.E.2d 411 (1977), and freedom of speech and assembly, W.Va.Const., art. 3 § 7, State ex rel. Daily Mail Publishing Co. v. Smith, W.Va., 248 S.E.2d 269 (1978) aff'd ___ U.S. ___, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979), provisions. Accordingly the following cases to the contrary are hereby expressly overruled with regard to this issue: State ex rel. Brewer v. Wilson, 151 W.Va. 113, 150 S.E.2d 592 (1966); State ex rel. Morrison v. Freeland, 139 W.Va. 327, 81 S.E.2d 685 (1954); State ex rel. Ralich v. Millsop, 138 W.Va. 599, 76 S.E.2d 737 (1953); Booten v. Pinson, 77 W.Va. 412, 89 S.E. 985 (1915); McMillin v. Neely, 66 W.Va. 496, 66 S.E. 635 (1909); and Kahle v. Peters, 64 W.Va. 400, 62 S.E. 691 (1908).
For the reasons stated above the judgment of the Circuit Court of Harrison County is affirmed.
Affirmed.
NOTES
[1] See State ex rel. Alsop v. McCartney, W.Va., 228 S.E.2d 278 (1976); Benson v. Robertson, W.Va., 226 S.E.2d 447 (1976); State ex rel. Maloney v. McCartney, W.Va., 223 S.E.2d 607 (1976); Moore v. McCartney, 425 U.S. 946, 96 S.Ct. 1689, 48 L.Ed.2d 190 (1976); State ex rel. Smoleski v. County Court of Hancock County, 153 W.Va. 307, 168 S.E.2d 521 (1969); State ex rel. Brewer v. Wilson, 151 W.Va. 113, 150 S.E.2d 592 (1966); State ex rel. Summerfield v. Maxwell, 148 W.Va. 535, 135 S.E.2d 741 (1964); State ex rel. Cline v. Hatfield, 145 W.Va. 611, 116 S.E.2d 703 (1960); State ex rel. Duke v. O'Brien, 145 W.Va. 600, 117 S.E.2d 353 (1960).