387 S.E.2d 858

**Harold D. CARPENTER and William M. Armentrout**

v.

**Junior R. COBB.**

No. 19184.

Supreme Court of Appeals of West Virginia.

Dec. 21, 1989.

George M. Cooper, Sutton, for Junior R. Cobb.

Dan L. Hardway, Hardway & Cometti, Charleston, for Harold D. Carpenter and William M. Armentrout.

MILLER, Justice:

Junior R. Cobb appeals from a final order of the Circuit Court of Webster County which declared that, pursuant to W.Va. Code, 18–5–1a (1967), Mr. Cobb was ineligible for membership on the Webster County Board of Education (Board) because he was the chairman of the Webster County Republican Party Executive Committee (Committee).

Mr. Cobb, a resident of Cowen, was appointed chairman of the Committee in 1987 after resigning his position as an elected member of the Committee. In May, 1988, he was elected to the Board, assuming his duties on July 5, 1988. Before and after his candidacy and election, Mr. Cobb sought advice from the Secretary of State regarding his eligibility for election to the Board. He relied on two Attorney General's opinions, supplied by the Secretary of State, which held that the chairmanship of an executive political party committee did not amount to a disqualification.[1]

During March and April, 1989, the Board considered filling the position of county superintendent of schools. On April 24, 1989, at a meeting of the Board, Harold D. Carpenter, the president of the Board, announced that he had filed this action for a declaratory judgment and that he believed that Mr. Cobb was an ineligible member of the Board.

The circuit court found that because Mr. Cobb was chairman of the Committee, he was ineligible for membership on the Board. The court reasoned that W.Va. Code, 18–5–1a,[2] is a preventative statute "designed to discourage the practice of playing partisan politics while occupying the position of a non partisan board of education member." The circuit court also held that the statute was constitutional.

It is quite apparent, as the circuit court found, that one of the purposes of W.Va. Code, 18–5–1a, is to insulate a school board from members who are connected to partisan politics. The need to keep partisan politics from influencing the decisions of local school boards in hiring and firing personnel, as well as in purchasing school supplies and equipment, is too obvious to warrant any extended discussion. In *Summers County Citizens League, Inc. v. Tassos*, 179 W.Va. 261, 266, 367 S.E.2d 209, 214 (1988), we spoke generally about the characteristics of a school board:

> "Membership of a board of education is a matter of high public trust charged with the most sacred government duty known to us. The office should be filled by persons of the highest character procurable and our Legislature has undertaken to throw safeguards around that office in order that the discharge of its high responsibilities shall be jeopardized as little as possible."

The legislature's commitment to keep partisan politics out of the school system is also demonstrated by W.Va.Code, 18–5–1 (1945), which requires that the members of a school board "shall be ... nominated and elected by the voters of the respective county without reference to political party affiliation." This commitment was en-

---

1. The opinions relied on were 68 Op. Att'y Gen. 308 (1965) and —— Op. Att'y Gen. —— (October 18, 1984). We have held that such opinions are not considered as precedent to be followed by this Court. *State v. Wassick*, 156 W.Va. 128, 191 S.E.2d 283 (1972).

2. W.Va.Code, 18–5–1a, provides, in pertinent part:

> *"Eligibility of members.* No person shall be eligible for membership on any county board of education who is not a citizen, resident in such county, or who accepts a position as teacher or service personnel in any school district, or who is an elected or an appointed member of any political party executive committee, or who becomes a candidate for any other office than to succeed himself."

dorsed by our citizens when the voters approved W.Va. Const. art. XII, § 6, which states, in part: "[T]he school board of any district shall be elected by the voters of the respective district without reference to political party affiliation." [3]

In *Carr v. Lambert,* 179 W.Va. 277, 367 S.E.2d 225 (1988), we addressed an issue relating to W.Va.Code, 18–5–1a, i.e., whether an assistant prosecuting attorney could run for the school board while holding that office. We concluded in Syllabus Point 2 of *Carr* that he was ineligible to run for the school board:

> "The position of assistant prosecuting attorney is an appointed public office and pursuant to *W.Va.Code,* 18–5–1a [1967], a person holding such office is ineligible to serve as a member of any county board of education."

■ It is apparent that W.Va.Code, 18–5–1a, prohibits membership on a county board of education to an individual who is "an elected or an appointed member of any political party executive committee." Under W.Va.Code, 3–1–9 (1985), a chairman is selected by the members of a political party executive committee. Such a person falls within the ambit of W.Va.Code, 18–5–1a, and is ineligible to hold office as a member of a school board. Mr. Cobb met this criteria, and the lower court was correct in finding him ineligible.

■ An additional challenge is made on the basis that our statute and constitutional provision violate equal protection and First Amendment principles. This argument was made and rejected in *Clements v. Fashing,* 457 U.S. 957, 102 S.Ct. 2836, 73

L.Ed.2d 508 (1982). The issue in *Clements* was whether a state constitutional provision barring certain elected officials from running for another elective office violated the Equal Protection Clause of the Fourteenth Amendment or the First Amendment [4] to the United States Constitution. Although the five-member majority was divided as to the reason, they did agree that the constitutional provisions were not violated. The dissent focused on the fact that the state constitutional provision was selective as to the public officers chosen, and the state could not justify the reason for this selectivity.

The Court in *Clements* commented that it did not have a precise "test for separating those restrictions that are valid from those that are invidious under the Equal Protection Clause." 457 U.S. at 963, 102 S.Ct. at 2844, 73 L.Ed.2d at 516. It went on to conclude that ballot access limitations by the state involved a consideration of the state's reasons for the restrictions and weighed against the nature of the interests burdened.

Of some interest is *Geary v. Renne,* 880 F.2d 1062 (9th Cir.1989), where the issue was the constitutionality of a California constitutional provision which prohibited a political party or party central committee from endorsing, supporting, or opposing a candidate for nonpartisan office. The court found that this did not violate the First or Fourteenth Amendments to the United States Constitution. Among its reasons were that the rule pertained to only a local office. The court pointed out that the United States Supreme Court had found a

---

3. The complete text of W.Va. Const., art. XII, § 6, is as follows:

> "The school districts into which the state is now divided shall continue until changed pursuant to act of the Legislature: Provided, That the school board of any district shall be elected by the voters of the respective district without reference to political party affiliation. No more than two of the members of such board may be residents of the same magisterial district within any school district."

This section was ratified by the voters on November 4, 1986. It appears that its enactment

was, in part, triggered by *Sturm v. Henderson,* 176 W.Va. 319, 342 S.E.2d 287 (1986), where we held that the provisions of W.Va.Code, 18–5–1, providing that no more than two members of a board of education shall be elected from one magisterial district, violated equal protection principles.

4. The First Amendment rights of free speech and association have been found to be implicated by regulations restricting access to public office. *See Eu v. San Francisco County Democratic Cent. Comm.,* 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989).

state's interest to be more compelling when its interest was only regulating local offices. *Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983); *Cousins v. Wigoda,* 419 U.S. 477, 95 S.Ct. 541, 42 L.Ed.2d 595 (1975).

A second reason advanced in *Geary* was that the restriction as to nonpartisan offices was less severe than the substantial First Amendment impairment imposed at the federal level

"on the political activities of federal employees that the Court has upheld. *See CSC v. Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 2882, 37 L.Ed.2d 796 (1973) (approving the constitutionality of 5 U.S.C. § 7324(a)(2) (the Hatch Act), which prevents many thousands of federal employees from holding a party office, working at the polls, acting as a party paymasters, politicking for a partisan candidate, raising funds for a partisan candidate or political party, managing the partisan candidate campaign, serving as delegates to a party convention, etc.)[.]" 880 F.2d at 1067–68.

We have characterized the right to run for office as a fundamental right, as set out in Syllabus Point 1 of *Sturm v. Henderson,* 176 W.Va. 319, 342 S.E.2d 287 (1986):

"The right to become a candidate for public office is a fundamental right, and restrictions upon that right are subject to constitutional scrutiny. *Garcelon v. Rutledge,* 173 W.Va. 572, 318 S.E.2d 622, 625 (1984)."

In most of our ballot access cases we have dealt with technical restrictions, such as length of residency or property ownership in order to hold office,[5] where the state could present no justifiable reasons for such restrictions. In the present case, the manner of electing members of a school board, both by statute and by our constitution, is by a nonpartisan election. The defendant does not attack this law requiring the nonpartisan election of the members of a board of education.[6] Yet, the basic purpose behind the exclusion of members of "any political party executive committee" in W.Va.Code, 18–5–1a, is to keep those who are intimately involved in partisan party politics off a school board. This is entirely consistent with our constitutional and statutory provisions relating to nonpartisan election of school board members.

Additionally, we find the reasons advanced in *Geary* to be relevant to this case. The statutory and constitutional restriction is limited to a local elective office where there is a more compelling state interest to shield the integrity of that office from partisan political influence. This is particularly true where the school board has substantial statutory authority over hiring and firing of school personnel, as well as contracting for school supplies and equipment. This restriction is also less than those imposed on federal employees and upheld in *Letter Carriers* and discussed in *Geary.*

For these reasons, we conclude that the preclusion of membership on a county school board to a member of any political party executive committee under W.Va. Code, 18–5–1a, is not an unconstitutional restriction on the right to run for office under the First and Fourteenth Amendments to the United States Constitution.

---

**5.** *Marra v. Zink,* 163 W.Va. 400, 256 S.E.2d 581 (1979) (one-year residency to file for city council); *State ex rel. Piccirillo v. City of Follansbee,* 160 W.Va. 329, 233 S.E.2d 419 (1977) (one hundred dollar property ownership). *See State ex rel. Bromelow v. Daniel,* 163 W.Va. 532, 258 S.E.2d 119 (1979) (mayoral candidate must have corporate surety bond in amount of $100,000).

**6.** The right to have nonpartisan elections to certain offices does not appear to violate equal protection principles. *Dade County v. Young Democratic Club of Dade County,* 104 So.2d 636 (Fla.1958); *Fisher v. Masters,* 59 Idaho 366, 83 P.2d 212 (1938); *Koelsch v. Girard,* 54 Idaho 452, 33 P.2d 816 (1934); *Sarlls v. State,* 201 Ind. 88, 166 N.E. 270 (1929); *Whitney v. Skinner,* 194 Ky. 804, 241 S.W. 350 (1922); *Bareham v. City of Rochester,* 246 N.Y. 140, 158 N.E. 51 (1927); *State ex rel. Weinberger v. Miller,* 87 Ohio St. 12, 99 N.E. 1078 (1912); *Winston v. Moore,* 244 Pa. 447, 91 A. 520 (1914); *State ex rel. Binner v. Buer,* 174 Wis. 120, 182 N.W. 855 (1921). *See* Annot., 125 A.L.R. 1044 (1940).

For these reasons, the judgment of the circuit court is affirmed.[7]

Affirmed.

---

**7.** In the companion case of *State ex rel. Tenney v. Board of Educ. of Webster County,* 182 W.Va. 395, 387 S.E.2d 862 (1989), filed contemporane- ously with this opinion, we discuss Mr. Cobb's status as a de facto officer on the Board.