387 S.E.2d 862

STATE of West Virginia ex rel. Garry R. TENNEY

v.

BOARD OF EDUCATION OF WEBSTER COUNTY, et al.

No. 19265.

Supreme Court of Appeals of West Virginia.

Dec. 21, 1989.

Leo Catsonis, William B. McGinley, Charleston, for State of W.Va., ex rel. Garry R. Tenney.

Ernest V. Morton, Pros. Atty., Webster Springs, for Bd. of Educ. of Webster County, W.Va.

WORKMAN, Justice:

Petitioner, Garry R. Tenney, seeks a writ of mandamus for the purpose of ordering the Webster County Board of Education (Board) to hire petitioner as Webster County Superintendent of Schools (Superintendent). Although the Board elected petitioner to this position, the vote was challenged and rejected because one of the Board members, Junior L. Cobb, was deemed to be disqualified from Board membership. Cobb was disqualified because he was the Chairman of the Webster County Republi-

---

can Executive Committee (Executive Committee) when elected to the Board in violation of W.Va.Code § 18–5–1a (1988). That statute provides in relevant part:

No person shall be eligible for membership on any county board of education who is not a citizen, resident in such county, or who accepts a position as teacher or service personnel in any school district, or who is an elected or an appointed member of any political party executive committee, or who becomes a candidate for any other office than to succeed himself.

*Id.*

Cobb has served as chairman of the Executive Committee since 1987. His term as a Board member began on July 5, 1988. On April 24, 1989, Harold Carpenter, then and current president of the Board, instituted a declaratory judgment action seeking to remove Cobb from the Board on the basis of W.Va.Code § 18–5–1a.[1]

At the regular meeting of the board on April 24, 1989, the same date on which the declaratory judgment action was instituted by Carpenter, Cobb made a motion

to repost the position of Superintendent of Webster County Schools in Webster County and to notify Garry R. Tenney to be present for an interview at a called board meeting to be held at 7:00 p.m., April 28, 1989, for an interview, the purpose of the board meeting to include making motions and voting to employ a superintendent of Webster County Schools.

Minutes of April 24, 1989 Webster County Board of Education meeting. Voting for

this motion were Cobb, Roy D. Tenney, and Susanna McCoy. Board President Carpenter and Charles B. Cool voted against the motion.

At the specially called board meeting on April 28, 1989,[2] board members McCoy, Tenney, and Cobb voted in favor of McCoy's motion that petitioner be employed as Superintendent for two years at an annual salary of $45,000.00 per year. Carpenter refused to recognize Cobb's vote on this motion because of Cobb's membership on the Executive Committee. Before Cobb moved for Tenney's election, Board President Carpenter pronounced that the meeting was improperly called, and further advised the Board:

that I have instituted action in Webster County Circuit Court contending that Mr. Cobb's seat is vacant on this Board and to advise them that any action they take may be void on any 3–2 vote in which Mr. Cobb participates. This is under WV Code 18–5–1a which is clear and unambiguous. I would also advise this Board that they should not take any action until the hearing is held in Circuit Court at 2 P.M. on Thursday, May 4.

Minutes from the April 28, 1989 Webster County Board of Education meeting.

Petitioner maintains that even if Cobb was improperly elected to the Board, any action which he took as a Board member until he was removed from office on June 24, 1989, by order of the Webster County Circuit Court, must be viewed pursuant to W.Va.Code § 6–5–3 (1987) as the act of an officer de facto. That particular statute provides in its entirety:

---

**1.** By order of the Webster County Circuit Court dated June 24, 1989, Cobb was removed from his position as a Board member in connection with the declaratory judgment action. This Court accepted the appeal of that decision on September 6, 1989, and affirmed the circuit court's ruling that Cobb was ineligible to hold office as a member of the school board. The Court reasoned that because the chairman is selected by the members of a political party executive committee, he falls within the ambit of W.Va.Code § 18–5–1a's prohibition of board membership to elected or appointed members of political party executive committees. The Court upheld W.Va.Code § 18–5–1a, rejecting

appellant's contention that preclusion of board membership to a member of a political party executive committee is an unconstitutional restriction on the right to run for office under the First and Fourteenth Amendments to the United States Constitution. *See Carpenter v. Cobb,* 182 W.Va. 391, 387 S.E.2d 858 (1989).

**2.** Because he took the position that Cobb was not a valid Board member, Carpenter declared that the specially called Board meeting had not been properly called. West Virginia Code § 18–5–4 (Supp.1989) permits a special Board meeting to be called by the president or by three Board members.

All judgments given and all acts done by any person, by authority or color of any office, or the deputation thereof, under the restored government of Virginia or of this state, before his removal therefrom, shall be valid, though it afterwards may have been or may be decided or adjudged that he was not lawfully elected or appointed, or was disqualified to hold the office, or that the same had been forfeited or vacated.

Based on W.Va.Code § 6–5–3, petitioner contends that Cobb was acting as a de facto officer when he voted for Tenny's election to the county superintendent position and further, that the vote was valid because it occurred prior to Cobb's removal from office.

The rationale behind the rule set forth in W.Va.Code § 6–5–3 was elucidated by this Court in *State v. Huff,* 80 W.Va. 468, 92 S.E. 681 (1917) where we noted that

[t]he policy and reason of the rule which declares that, when public or personal rights are affected, the acts of a de facto officer are as valid and binding as if he had performed them while acting de jure, is grounded upon the salutary principles of public policy, and is essential to the due administration of justice and the protection of the most sacred interests of society. Otherwise, there necessarily would ensue the gravest consequences and the utmost confusion in both public and private affairs—a condition opposed to the true policy of every well-regulated community.

*Id.* 80 W.Va. at 472, 92 S.E. at 683. This rule which validates the acts of an officer de facto has one important exception as we explained in *Herring v. Lee,* 22 W.Va. 661 (1883):

But when in civil cases, at least, the public or third persons have knowledge that the person so acting or pretending to act is not the officer *de jure,* the reason of the rule ceases and the rule itself for validating such act does not apply. *If the person who invokes pro-*

*tection for the act of a de facto officer, knew when the act was done that it was not the act of a legal officer, the law will not sustain such act or h[o]ld it valid as to such person but will declare it void.*

*Id.* 22 W.Va. at 671 —— S.E.2d —— (emphasis supplied).

■ The facts of this case demonstrate that the exception, rather than the rule, regarding the validity of an officer de facto's acts applies to this case. The minutes of the specially called Board meeting held on April 28, 1989 indicate that petitioner was present at this particular meeting where the issue of Cobb's Board membership was clearly put in issue. Specifically, Board President Carpenter advised everyone in attendance that he had initiated a civil action in Webster County Circuit Court to determine whether Cobb was improperly holding a seat as a Board member given his simultaneous position as chairman of the Executive Committee. Carpenter further alerted petitioner "that any action [the Board] take[s] may be void on any 3–2 vote in which Mr. Cobb participates." Consistent with his position regarding Cobb's ineligibility, Carpenter refused to recognize Cobb's vote on the motion to elect petitioner as county Superintendent. Given petitioner's attendance at the April 28, 1989 Board meeting, there can be no question that Tenney was put on notice that Cobb may not have been properly elected to the Board because of his membership on the Executive Committee.[3]

This Court in *State ex rel. Roush v. Board of Educ.,* 128 W.Va. 150, 35 S.E.2d 850 (1945) addressed issues which are both factually and legally apposite to the case *sub judice.* After petitioner Roush was elected to the position of County Superintendent of the Mason County Board of Education, it was determined that Russell Starkey, one of the Board members who cast the deciding vote to elect Roush as Superintendent, had not been lawfully

---

**3.** Appellee argues that petitioner's actions indicate that he knew that he had not been properly elected as Superintendent. Specifically, petitioner did not pursue the certification of his election to the State Superintendent prior to

July 1, 1989 as required by W.Va.Code § 18–5–1 (1988). In addition, Tenney did not resign from his current job nor did he report to work as the Superintendent or attempt to perform any of the duties of the Superintendent.

elected to the Board. Roush supported his petition for a writ of mandamus with arguments identical to those made by Tenney in this case. Specifically, Roush maintained that Starkey was a de facto member of the Board pursuant to W.Va.Code § 6-5-3 until his removal from office. Based on that status, Roush contended that Starkey's vote had to be recognized as valid and therefore Roush's election should be binding on the Board.

In deciding whether Starkey's vote for Roush was valid, the *Roush* court first determined that Starkey was a de facto Board member from the date he took office because he had not been properly elected.[4] *Id.* 128 W.Va. at 153, 35 S.E.2d at 851. The Court then weighed "whether persons appointed by de facto officers are to be treated as third persons within the rule[ ]" which provides "that the acts of a de facto officer as to the general public and third persons are deemed binding on the basis of public necessity...." *Id.* The Court resolved this issue by declaring that:

[w]e believe that the better rule is that those claiming title to office conferred by a de facto officer, or by an organization of which he acted as an essential part, should not be regarded as third persons when their right to hold the office is directly questioned. We believe that their status should be held to be interrelated with that of the unit conferring the office so that they are charged with knowledge of the defect in their title thereto. We know that this principle, theoretically, may occasionally result in injustice and in the temporary disruption of organizations, but as compared with the otherwise temptation to wrongfully get and illegitimately retain office, we prefer it.

*Roush,* 128 W.Va. 153, 35 S.E.2d at 851.

To summarize, the *Roush* court held that knowledge of an officer de facto's status is imputed to a person claiming title to an office conferred by an officer de facto. While *Roush* would impute Tenney with knowledge of Cobb's ineligibility for office, this is not necessary because petitioner had firsthand knowledge that Cobb's eligibility for Board membership was the issue of a pending civil action and further, that any action taken by the Board on April 28, 1989 might not be valid if Cobb cast the deciding vote on the issue. *See* Minutes of April 28, 1989 Webster County Board of Education meeting.

As petitioner recognized, three factors must exist for an individual to be an officer de facto: "(1) The office must have a de jure existence, or at least be one recognized by law; (2) claimant must be in actual possession thereof; and (3) his possession must be held under color of title or authority." *See State ex rel. Scanes v. Babb,* 124 W.Va. 428, 20 S.E.2d 683, 686 (1942). Consequently, despite Cobb's ineligibility for Board membership pursuant to W.Va.Code § 18-5-1a, he was an officer de facto from the time of his election to the Board.[5] *See Stowers v. Blackburn,* 141 W.Va. 328, 90 S.E.2d 277, 285 (1955). During the period prior to April 28, 1989, Cobb's status as an officer de facto rendered his acts as a Board member valid pursuant to W.Va. Code § 6-5-3.

■ Cobb's vote for Tenney at the specially called Board meeting on April 28, 1989 was not valid because of this Court's holding in *Herring:* The rule that any act of an officer de facto which is performed prior to his removal from office is valid, W.Va.Code § 6-5-3, ceases when "the person who invokes protection for the act of a *de facto* officer, knew when the act was done that it was not the act of a legal officer...." 22 W.Va. at 671, —— S.E.2d ——. In making this adjudication, we interpret the word "knew" in *Herring* to encompass constructive knowledge as well

---

**4.** Starkey was declared a de facto Board member based on a prior decision, *State ex rel. Miller v. Board of Educ.,* 126 W.Va. 248, 27 S.E.2d 599 (1943), where it was determined that Starkey was not elected to the Board in the 1942 general election because he received less than a majori-

ty of the votes cast. *Id.* 126 W.Va. at 254, 27 S.E.2d at 603.

**5.** Petitioner takes the position throughout his petition and supporting memorandum that Cobb was a de facto Board member.

as actual knowledge of an individual's ineligibility to hold office. When, as in this case, an individual's eligibility for membership on a school board is put in issue due to noncompliance with statutory eligibility requirements, the acts of the Board member are no longer subject to automatic validity under the officer de facto rule set forth in W.Va.Code § 6–5–3.

Our decision in this case is not inconsistent with the Court's ruling in the *Stowers* case. That case was initiated by a fire chief, Stowers, who was seeking reinstatement to office after being removed by a vote of the civil service commission. Stowers was reinstated as fire chief because one of the commissioner's votes was declared invalid. Weaver, one of the commission members who voted for the fire chief's suspension was subsequently disqualified from holding office because of his membership on a political committee. Petitioner places undue importance on language in the *Stowers* opinion which states that Weaver's vote for Stower's removal was valid because he remained a de facto member of the civil service commission until his resignation. *See Stowers*, 141 W.Va. at 344, 90 S.E.2d at 285. By analogy, petitioner argues that Cobb's vote for Tenney was valid as Cobb was a de facto member until his removal from office. The facts of the case at bar differ significantly from those in *Stowers*. In *Stowers*, there was no evidence that anyone knew of Starkey's ineligibility for office until *after* the Commission had voted to remove Stowers from office and an order to that effect had been entered. *Id.* 141 W.Va. at 332, 90 S.E.2d at 281. Given these facts, *Stowers* does not contradict this Court's earlier rulings in *Herring* and *Roush*. Because Weaver's status had not been put in question at the time of his vote to oust Stowers, the Court properly viewed his vote as the valid act of an officer de facto.

We expressly overrule the decision of the Circuit Court of Webster County which

held that there had been a vacancy on the Board since the date on which Cobb took office (July 5, 1988) because of Cobb's ineligibility for Board membership. *Harold D. Carpenter v. Junior R. Cobb*, No. 89–C–32 (Webster Co. Circuit Court June 22, 1989). The circuit court's ruling defeats the purpose of the officer de facto rule: to prevent nullification of acts made by a de facto officer provided that the party seeking to enforce the acts is unaware that the officer is not a de jure officer. If we were to affirm the circuit court on this issue, we would be abrogating the officer de facto rule in its entirety. In this Court's opinion, the office de facto rule still serves an important purpose. For the public's sake, the acts of an officer de facto must be upheld as valid until such time as the public or a third party has knowledge or is placed on notice regarding the de facto status of the officer in question.[6]

Based on the foregoing, petitioner's request for a writ of mandamus is denied.

Writ denied.

---

**6.** In ruling that Cobb's office had been vacant since the date he took office because of his ineligibility pursuant to W.Va.Code § 18–5–1a, the circuit court relied on W.Va.Code § 18–5–1b (Supp.1989). That section provides in relevant part: "The term of office of any member of any county board of education shall immediately cease, and a vacancy shall exist, upon occur-

rence of ineligibility as prescribed in section one-a [§ 18–5–1a] of this article." Because we view the officer de facto rule as worthy of upholding, we interpret the word "ineligible" in W.Va.Code § 18–5–1b as being determined on the date when the public or a third party has constructive or actual knowledge of a Board member's ineligibility.