489 S.E.2d 485

Robert L. BURKHART, Appellant,

v.

Honorable Virginia M. SINE, Circuit Clerk of Berkeley County; Howard Strauss; D. Wayne Dunham, County Commissioner of Berkeley County; Robert S. Butler and John E. Wright, Appellees.

Robert L. BURKHART, Appellee,

v.

Honorable Virginia M. SINE, Circuit Clerk of Berkeley County; Howard Strauss; D. Wayne Dunham, County Commissioner of Berkeley County; Robert S. Butler and John E. Wright, Appellees,

and

Howard Strauss, Respondent Below, Appellant.

Nos. 23974, 23975.

Supreme Court of Appeals of West Virginia.

Submitted April 22, 1997.

Decided June 19, 1997.

Douglas S. Rockwell, Steptoe & Johnson, Charles Town, and Ancil G. Ramey, Steptoe & Johnson, Charleston, for Burkhart.

Patrick G. Henry, IV, Henry, Grant, Taylor & Janelle, Martinsburg, for Sine, Butler and Wright.

Richard G. Gay, Berkeley Springs, for Strauss.

Charles S. Trump, IV, Trump & Trump, Berkeley Springs, for Dunham.

Norwood Bentley, III, Bowles, Rice, McDavid, Graff & Love, Martinsburg, for Amicus Curiae, The Berkeley County Commission.

MAYNARD, Justice:

This is an appeal from a mandamus action which originated in the Circuit Court of Berkeley County, West Virginia, by Robert L. Burkhart, who is a candidate for the office of County Commissioner on the Democrat ticket. Burkhart requests that Howard L. Strauss, a candidate for the office of County Commissioner on the Republican ticket, be determined to be ineligible to serve as a County Commissioner from the Norborne Magisterial District. Strauss cross-appeals, requesting that the stay issued by this Court, denying him the right to take the oath of office, be lifted and that he be allowed to assume a seat on the Berkeley County Commission. The circuit court did not declare Strauss ineligible nor rule that D. Wayne Dunham, elected in 1994, should be removed from office. The court did declare that Burkhart was a proper candidate for the Democrat party from Valley Magisterial District. These cases have been consolidated on appeal. We agree with Burkhart that Strauss should be disqualified as a candidate and, therefore, reverse the decision of the Circuit Court of Berkeley County.

On May 13, 1997, this Court entered an order reversing the circuit court and remanding the case with directions to issue a mandamus order declaring that Strauss is ineligible to serve and that Burkhart is entitled to the seat on the County Commission. We indicated in the May 13, 1997 order that this opinion would follow, setting forth the reasons for this Court's decision.

In January 1994, D. Wayne Dunham filed for the office of County Commissioner from Valley Magisterial District (Valley) in Berkeley County, West Virginia. He was, at that time, a resident of Valley and filed as a member of the Republican Party. In May 1994, while continuing to reside in Valley, Dunham won the Republican nomination. On July 14, 1994, the County Commission redistricted the county as a consequence of the current census results. The redistricting moved the precinct boundary lines, placing Dunham in the Norborne Magisterial District (Norborne). The Berkeley Magisterial Districts now include Norborne Magisterial District, Adam Stephen Magisterial District, Potomac Magisterial District, Tuscarora Magisterial District, Shenandoah Magisterial District, and Valley Magisterial District.

On November 8, 1994, Dunham was elected to serve as a County Commissioner for a full term of six years. The election ballot listed him as a resident of Valley, even though because of the redistricting, he was at that time, a resident of Norborne. There is no question the ballot contained a mistake. Dunham contends he learned, for the first time in December 1995, that he no longer resided in Valley but that he was at that time a resident of Norborne.

The opening and closing filing dates for candidates in the 1996 primary election were January 8, 1996 and February 3, 1996, respectively. However, due to a blizzard, the Berkeley County Courthouse was closed from January 8, 1996 until January 15, 1996. The courthouse was also closed on January 15, 1996 to observe Martin Luther King, Jr. Day. Consequently, the first day candidates could file for office was January 16, 1996. On that date, Howard L. Strauss filed to run as a Republican candidate for the office of County Commissioner from the "open" district of Norborne. Also on that date, Robert L. Burkhart filed to run as a Democrat candidate for the office of County Commissioner from Valley.

After Dunham became aware he was a Norborne resident, he made a decision to move to rental property he owned in Valley. He contends he had long-standing plans to build a new house in Valley, but he was also aware that if Burkhart was elected from Valley, he would either have to abandon his plans to build the new house in Valley and remain in Norborne or give up his seat on the Commission. He believed that no two Commissioners could be elected from the same magisterial district. Dunham sought the advice of counsel, who sought the advice of the Secretary of State. He states that he followed the advice he received by filing a written announcement with the Clerk of the Circuit Court of Berkeley County. This announcement indicated his intention to immediately move to Valley. On January 6, 1996, the Martinsburg Journal, a newspaper of general circulation, carried a front-page story which contained the announcement. Then, on January 16, 1996, Dunham went to the office of the Clerk of the Berkeley County Commission and changed his address on his voter's registration to the address of the rental property he owned in Valley. He moved into the rental property on January 25, 1996.

The primary election was held on May 14, 1996. Burkhart won the Democratic nomination from Valley, and Strauss won the Republican nomination from Norborne. On July 5, 1996, Burkhart petitioned this Court for a writ of mandamus, requesting that a rule to show cause issue, removing Strauss from the ballot and declaring Dunham ineligible to sit in the Valley district. This Court refused to issue the writ, but referred the matter to the circuit court.

On July 15, 1996, Burkhart filed a petition in circuit court, requesting that Strauss be declared disqualified as the Republican nominee for the County Commission, or, in the alternative, that Dunham be declared to have forfeited and surrendered his seat on the County Commission by moving from Norborne to Valley. The circuit court, following a hearing on the case, entered an order on September 26, 1996. The court found that "Norborne became an open district when D. Wayne Dunham reestablished his residency in Valley District." As a result, the court denied Burkhart's request to disqualify Strauss as a candidate. The court determined that the issue of whether Dunham forfeited his seat on the Commission was not

properly before the court, by concluding "[t]he issue ... generally affects all residents of Berkeley county—but the issue directly affects Howard Strauss, the Berkeley County Republican party, and the other Republican candidates for Commissioner and they have not raised the issue." The court also concluded Burkhart had a constitutional right to be a candidate for Commissioner on the date he filed the certificate of candidacy and on the date of the primary election.

Thereafter, on October 8, 1996, Strauss filed a petition for a writ of prohibition and/or mandamus with this Court, which was denied. The general election was held in November 1996. The voters of Berkeley County elected Strauss to fill the open seat on the County Commission. Burkhart then filed a petition for appeal with this Court, seeking review of the circuit court's September 26, 1996 order. Burkhart also sought a stay of the administration of the oath of office to Strauss. This Court granted both requests. Strauss also filed a petition for appeal, which was granted. These cross-appeals have been consolidated on appeal for purposes of writing this opinion.

On appeal, Burkhart assigns three errors. He contends the circuit court erred: (1) by failing to disqualify Strauss as a candidate for the Berkeley County Commission; (2) by failing to recognize Burkhart's right to challenge the qualifications of Strauss to be a candidate for the Berkeley County Commission; and (3) by failing to recognize the qualifications for a candidate to the County Commission are determined when the candidate files his candidacy. On appeal, Strauss assigns four errors. Strauss alleges the circuit court erred: (1) by determining the word "elected," as it is used in Article IX, § 10 of the West Virginia Constitution, allowed Burkhart to be nominated for the office of County Commissioner, even though Dunham, who was already elected, resided in Burkhart's magisterial district; (2) in construing the word "election," as it is used in the West Virginia Constitution, so as to allow the nomination of a candidate from a district where a duly-elected Commissioner already resides; (3) by construing the 1963 amendment to W.Va.Code § 3–5–4 to not require

that a candidate for the office of County Commissioner be qualified on the date of nomination, that is, the primary election; and (4) by not concluding this Court's holding in *State ex rel. Brewer v. Wilson*, 151 W.Va. 113, 150 S.E.2d 592 (1966), controls this case. Strauss contends that holding otherwise means the Legislature violated the West Virginia Constitution, Article 14, §§ 1 and 2, by amending W.Va.Code § 3–5–4 and imposing a constitutional requirement in primary elections.

■ This Court has previously said:

"The power of the legislature to regulate the nomination and election of candidates for public office and to prescribe essential qualifications to be possessed by candidates in order to be eligible to be nominated or elected is plenary within constitutional limitations." Syl. Pt. 2, *State ex rel. Brewer v. Wilson*, 151 W.Va. 113, 150 S.E.2d 592 (1966), *overruled in part on other grounds in Marra v. Zink*, 163 W.Va. 400, 256 S.E.2d 581 (1979).

Syllabus Point 2, *Adkins v. Smith*, 185 W.Va. 481, 408 S.E.2d 60 (1991).

■ This Court further stated in Syllabus Point 3 of *Adkins, id.*:

"The language of the pertinent statute or constitutional provision relating to essential qualifications of candidates for a public office must be regarded by a court as controlling in determining at what time an essential qualification must exist." Syl. Pt. 3, *State ex rel. Brewer v. Wilson*, 151 W.Va. 113, 150 S.E.2d 592 (1966), *overruled in part on other grounds in Marra v. Zink*, 163 W.Va. 400, 256 S.E.2d 581 (1979).

The central issue in this case and the only issue we must decide is whether Strauss was qualified as a candidate to run for a seat on the County Commission and should be deemed to have won the election, or whether Burkhart was qualified as a candidate to run for a seat on the County Commission and should be deemed to have won the election. In other words, we must determine which candidate met the constitutional residency requirement. The question as to when the requirements of eligibility to fill an office

must exist is governed by the West Virginia Code and the West Virginia Constitution. "The language of such provisions may expressly or by necessary implication specify the time when the eligibility must vest. Where such is the case, the candidate must possess the necessary qualifications at that time. . . ." *State ex rel. Dostert v. Riggleman,* 155 W.Va. 808, 812, 187 S.E.2d 591, 593 (1972).

W.Va.Code § 3–5–4 (1991) states in pertinent part: "Candidates for the office of commissioner of the county commission shall be nominated and elected in accordance with the provisions of section ten, article nine of the Constitution of the state of West Virginia[.]" The relevant portion of Article IX, § 10 of the West Virginia Constitution states as follows: "The commissioners shall be elected by the voters of the county, and hold their office for a term of six years . . . but no two of said commissioners shall be *elected from* the same magisterial district. . . ." (Emphasis added).

■ In determining what this mandate means, we are bound by the precept that " '[w]here a provision of a constitution is clear in its terms and of plain interpretation to any ordinary and reasonable mind, it should be applied and not construed.' Syl. Pt. 3, *State ex rel. Smith v. Gore,* 150 W.Va. 71, 143 S.E.2d 791 (1965);" Syllabus Point 1, *State ex rel. Gainer v. West Virginia Board of Investments,* 194 W.Va. 143, 459 S.E.2d 531 (1995). The wording of this constitutional mandate is simple, plain, and easy to understand; therefore, we will apply it to mean just what it says.

A person is elected from the magisterial district in which that candidate resides on the date he or she is elected to serve on the Commission. At the time of the general election, the candidate is bound by the magisterial district in which he or she resided on the date candidacy papers were filed. Generally, the district in which a candidate resides during the filing period is also the candidate's residence during the election. However, we are aware that unusual circumstances occur from time to time. The situation in the case at bar is an aberration because of the interim redistricting. Dunham lived in Valley when he filed and when he was nominated. But, because of the July 1994 redistricting, Dunham lived in Norborne at the time he was elected to serve on the County Commission.[1] We must determine which of the two election districts Dunham was "elected from."

■ The elected Commissioner carries the magisterial district from which he or she is elected with him or her throughout the entire six-year term of office. All other residents of that particular magisterial district are disqualified as a candidate for County Commission during the time the elected person serves. Therefore, we hold that in accordance with W.Va.Code § 3–5–4 (1991) and Article IX, § 10 of the West Virginia Constitution, a member of the County Commission is deemed to be elected from the magisterial district in which that person resides on the day that person is elected to serve on the County Commission, that is, the date of the general election. Absent unusual circumstances, a candidate generally resides in the same district on the date of filing in which he or she resides on the date of the election; therefore, a candidate carries that residence with him or her throughout the entire term. In accordance with this rule, we conclude Dunham was elected to serve on the County Commission from Norborne, thus disqualifying Strauss as a candidate during Dunham's tenure on the Commission.

We cannot accept Dunham's excuse that he was ignorant of the fact that redistricting

1. The genesis of the problem in this case is the redistricting which took place between the primary and general elections. Absent the interim redistricting, the dispute over this election probably would not have happened. We are aware the 1994 Berkeley County redistricting did not violate the law regarding the boundary lines of magisterial districts, as provided in W.Va.Code § 7–2–2 (1923). We are also aware that it is not our job to create new law in this area; that is the exclusive function of the legislature. Nonetheless, we pause to note that we hope County Commissions in the future will refrain from redistricting county magisterial districts between the primary election and the general election. Ideally, redistricting should take place prior to the primary election or after the general election or during an off year, in which elections do not take place.

changed the boundary lines and moved him from Valley into Norborne in July 1994. A candidate for public office has a duty to know in which district he resides and from which district he is running. To be elected from one district and thereafter move in order to keep another potential candidate from running is impermissible. The fact that Dunham moved to Valley after he was "elected from" Norborne is of no consequence.

In deciding this case, we must fashion a rule that is not only fair and consistent in application, but which will also discourage possible political manipulation of the election process in the future. A rule which would sanction or permit "suitcase gerrymandering," where officeholders change residence as part of a scheme designed to deliberately disqualify another candidate, would not be fair. By this rule, we seek to discourage the possibility of such political maneuvering. However, we want to make it very clear that we do not ascribe bad motives to any participant in the case *sub judice*. In fact, there is no indication that any of the events that happened here were deliberate or contrived or involved manipulation by any party in this case.

This is a difficult case procedurally because Burkhart and Strauss are not contesting the election results post-election. Generally, election contests take place post-election and follow the procedure mandated in Chapter 3 of the West Virginia Code, which directs that one must provide notice to the County Commission with a list of disputed votes. If one is dissatisfied with the County Commission's resolution of the contest, the statute provides for appeals to the circuit court and to this Court. The procedure for contesting county and district elections is provided in W.Va.Code § 3–7–7 (1963), which states in relevant part: "The county court [county commission] shall hear and decide election contests initiated pursuant to the provisions of the preceding section [§ 3–7–6]...." W.Va.Code § 3–7–6 (1963) reads as follows:

In all cases of contested elections, the county court [county commission] shall be the judge of the election, qualifications and

returns of their own members, and of all county and district officers.

A person intending to contest the election of another to any county or district office, including judge of any criminal, intermediate, common pleas, or other inferior court, or any office that shall hereafter be created to be filled by the voters of the county or of any magisterial or other district therein, shall, within ten days after the result of the election is declared, give the contestee notice in writing of such intention, and a list of the votes he will dispute, with the objections to each, and of the votes rejected for which he will contend. If the contestant object to the legality of the election, or the qualification of the person returned as elected, the notice shall set forth the facts on which such objection is founded. The person whose election is so contested shall, within ten days after receiving such notice, deliver to the contestant a like list of the votes he will dispute, with the objections to each, and of the rejected votes for which he will contend; and, if he has any objection to the qualification of the contestant, he shall specify in writing the facts on which the objection is founded. Each party shall append to his notice an affidavit that he verily believes the matters and things set forth to be true. If new facts be discovered by either party after he has given notice as aforesaid, he may, within ten days after such discovery, give an additional notice to his adversary, with the specifications and affidavit prescribed in this section.

Obviously, W.Va.Code § 3–7–6, which provides for supplying a list of contested votes, is meant to be applied post-election. This Court explained in *State ex rel. Jackson v. County Court of McDowell County*, 152 W.Va. 795, 799, 166 S.E.2d 554, 556–57 (1969), that "[t]he statute in its entirety discloses that it provides a procedure for a contest between two living persons who previously opposed each other as candidates by means of which to determine the validity or invalidity of disputed votes and, on that basis, to determine which candidate was elected." By its own terms, the statute applies to contests which take place post-election. The

dispute in the case at bar is not of that nature in that the number of votes cast for each candidate is not disputed. The question here calls for a determination of who was qualified pre-election to be a candidate, Strauss or Burkhart. This question was discussed previously in this opinion. We concluded Strauss was disqualified, thus leaving Burkhart as the only qualified candidate.

■ The statutory procedure for contesting elections was not followed in this case. Burkhart filed a pre-election mandamus action in circuit court, seeking to have Strauss disqualified as a nominee. There is no statute to control these election contests which originate in circuit court, except the mandamus statutes found in Chapter 53 of the West Virginia Code. Therefore, we hold that in a situation where a candidate for County Commission contests the qualifications of another candidate pre-election in a mandamus proceeding, the litigation is not governed by the procedure provided in W.Va.Code §§ 3–7–6 and 3–7–7. If one candidate is found to be disqualified and the other candidate is in all respects qualified, the qualified candidate is entitled to fill the open seat on the County Commission.

We pause here to note that as we are just now determining candidate qualifications, there is no way a vacancy could previously have been declared by the County Commission. There can be no vacancy before there is even a qualified candidate. In other words, a candidate must possess the required qualifications for an office, be lawfully elected to and assume the office, then vacate that office before a vacancy can be declared. The voters filled the open seat by voting for the only qualified candidate in the County Commission race, Burkhart.

■ During the time Dunham fulfills his term on the County Commission, other residents of Norborne are not eligible to file for the office of County Commissioner. It is impossible for an individual to meet the residency requirements if that individual resides in a magisterial district where a current member of the County Commission was "elected from." In *State ex rel. Morrison v. Freeland*, 139 W.Va. 327, 334–35, 81 S.E.2d 685, 690 (1954), *overruled in part on other grounds in Marra v. Zink*, 163 W.Va. 400, 256 S.E.2d 581 (1979), this Court quoted from 67 C.J.S. *Officers* § 26, by stating:

> Where the legislature has fixed the qualifications for an office pursuant to its authority so to do, the electors may not select one not possessing the qualifications prescribed, and one who is not eligible is not regarded as elected to office, although he may receive the highest number of votes cast and is in possession of a certificate of election, although it has been held that his election is not affected but merely his right to hold the office. . . .

Here, Strauss was not eligible to be elected because Dunham was already elected from Norborne and no two Commissioners may be elected from the same magisterial district. Therefore, the voters could not select Strauss and Strauss cannot be regarded as elected to the office.

On the day Strauss filed for office, January 16, 1996, he was disqualified because he was a resident of a magisterial district in which a duly qualified Commissioner, Dunham, was already residing. Dunham's change of residence to Valley after Strauss filed did not validate Strauss' filing for office. As Dunham was elected to and was serving on the County Commission from Norborne, another resident of Norborne could not be elected to the Commission. Consequently, Burkhart, a resident of Valley, was the proper candidate to be certified as a member of the Berkeley County Commission. It is therefore appropriate that Burkhart be seated.

It is therefore ordered that the decision of the Circuit Court of Berkeley County in this matter be, and the same hereby is, reversed, and it is further ordered that this case be remanded to the Circuit Court of Berkeley County with directions that the circuit court issue a mandamus order directing and declaring that Strauss is ineligible to serve as a County Commissioner from the Norborne District of Berkeley County, West Virginia, and that Burkhart is entitled to the seat.

Reversed and remanded with directions.