[This decision has been published in *Ohio Official Reports* at 93 Ohio St.3d 529.]

THE STATE EX REL. CITY OF NORTH OLMSTED *v.* CUYAHOGA COUNTY BOARD OF ELECTIONS.

[Cite as *State ex rel. N. Olmsted v. Cuyahoga Cty. Bd. of Elections*, 2001-Ohio-1626.]

*Mandamus sought to compel Cuyahoga County Board of Elections to complete the process rearranging North Olmsted's election precincts to conform to new ward boundaries by notifying all affected registered voters of their new precincts and polling places for the November 6, 2001 general election—Writ denied, when.*

(No. 01-1752—Submitted October 18, 2001—Decided October 23, 2001.)

IN MANDAMUS.

_____

*Per Curiam.*

{¶ 1} The 2001 filing deadline for elective offices in the city of North Olmsted, relator, was March 9, 2001. On March 30, 2001, the Secretary of State of Ohio issued a proclamation that the population for North Olmsted determined by the 2000 federal census was 34,113. Based on the census, the population for the four wards in North Olmsted are 7,532 (Ward 1), 8,273 (Ward 2), 9,304 (Ward 3), and 9,004 (Ward 4).

{¶ 2} After the Secretary of State's proclamation of the 2000 federal census figures, the North Olmsted City Council held meetings to redistrict the four wards pursuant to Section 7, Article IX of the North Olmsted Charter. The city council retained the services of an expert to assist in the redistricting.

{¶ 3} On May 8, 2001, North Olmsted held a primary election. There was only one contested nomination in the primary election, and in that race for council member for Ward 2, the margin of victory was two hundred votes.

**{¶ 4}** On June 19, 2001, the city council approved the redistricting of the city's wards so that the ward populations would be as close as practicable given natural existing boundaries. On June 27, 2001, the clerk of council submitted a new ward map reflecting the redistricting to respondent, the Cuyahoga County Board of Elections, for its use in assigning new precincts. Under the redistricting approved by the city council, the new wards have the following populations: 8,531 (Ward 1), 8,500 (Ward 2), 8,555 (Ward 3), and 8,527 (Ward 4).

**{¶ 5}** On September 21, 2001, the board sent a proposed precinct map to North Olmsted that depicted new election precincts conforming to the city's redistricted ward boundaries.

**{¶ 6}** On September 24, the board's director, Thomas Jelepis, notified various North Olmsted officials that the board could not complete its rearranging of the election precincts for the Cuyahoga County cities of North Olmsted, Fairview Park, and Euclid. Jelepis advised North Olmsted that voters in each of these cities would vote in the November 6, 2001 general election in their existing election precincts despite the ward redistricting that had occurred in these cities.

**{¶ 7}** On September 27, North Olmsted demanded that the board rearrange the city's election precincts to conform to the new ward boundaries. If the city election precincts are not rearranged to conform to the new ward boundaries established by North Olmsted, some registered voters will vote in their old wards rather than in their new wards in the November 6, 2001 general election. In its demand, the city, through its law director, asserted that the board had a clear legal duty to complete the redistricting before the November 6 general election and that a claimed lack of manpower by the board was not a justifiable excuse to perform the ministerial task of notifying registered voters of the changes.

**{¶ 8}** Despite a scheduled September 29 board meeting to discuss revising the precincts in North Olmsted and the other cities, the board failed to meet on that date due to the lack of a quorum. According to North Olmsted, further

2

communications with the board after September 24 indicated that the board might reconsider its decision and complete the rearrangement in time for the general election, but the September 29 cancellation prevented that from occurring.

**{¶ 9}** On October 1, 2001, North Olmsted filed this expedited election action for a writ of mandamus to compel the board of elections to complete the task of rearranging the city's election precincts to conform to the new ward boundaries by notifying all affected registered North Olmsted voters of their new precincts and polling places and to perform other necessary and appropriate ministerial tasks to complete the process in time for the November 6, 2001 general election. North Olmsted also moved for a temporary restraining order to prevent the board from issuing absentee ballots to registered voters in North Olmsted or accepting absentee ballots from those voters until we rule on the merits of the city's action.

**{¶ 10}** On October 2, the board met to consider the redistricting issues concerning Euclid, Fairview Park, and North Olmsted. The board voted to rearrange the precincts of Euclid with an effective date *before* the November 6, 2001 general election. There had been no 2001 primary election in Euclid. The board then voted to rearrange the election precincts in Fairview Park with an effective date *after* the November 6, 2001 general election. Finally, after recessing into executive session to discuss this litigation instituted by North Olmsted, the board voted unanimously to rearrange the election precincts of North Olmsted effective *after* the November 6, 2001 municipal election in North Olmsted. The board noted that North Olmsted had already started its 2001 election process with the May 2001 primary election, which was completed before redistricting.

**{¶ 11}** We subsequently granted the city's motion and issued a temporary restraining order, and the parties filed evidence and briefs pursuant to the expedited election schedule in S.Ct.Prac.R. X(9). 93 Ohio St.3d 1443, 756 N.E.2d 109. This cause is now before the court for consideration of the merits.

**{¶ 12}** North Olmsted requests a writ of mandamus to compel the board of elections to complete the process of rearranging the municipal election precincts to conform to the new ward boundaries by notifying all affected registered voters of their new precincts and polling places for the November 6, 2001 general election. In order to be entitled to the requested extraordinary relief in mandamus, North Olmsted must establish a clear legal right to completion of the redistricting process, a corresponding clear legal duty on the part of the board, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Becker v. Eastlake* (2001), 93 Ohio St.3d 502, 756 N.E.2d 1228.

**{¶ 13}** In attempting to establish the foregoing requirements, North Olmsted must prove that the board engaged in fraud, corruption, abuse of discretion, or clear disregard of statutes or pertinent law. *State ex rel. Stevens v. Geauga Cty. Bd. of Elections* (2000), 90 Ohio St.3d 223, 226, 736 N.E.2d 882, 884. North Olmsted contends that the board abused its discretion and acted in clear disregard of the North Olmsted Charter, R.C. 3501.08, and 3501.18(A), by deciding to delay the effective date of the redistricting until after the November 6, 2001 general election.

**{¶ 14}** Section 7, Article IX of the North Olmsted Charter provides the following procedure for the redistricting of municipal wards after each federal census:

"SEC. 7. GENERAL PROVISIONS.

"After each recurring Federal Census and within three months after the issuance of the proclamation by the Secretary of State, certifying the population of the City, or when there is annexed thereto, any territory, the council shall re-district the City into four (4) wards, if necessary, so as to have each ward as nearly equal in population as practicable and which shall be bounded by county lines, streets, alleys, avenues, public grounds, canals, water courses, municipal corporate lines, or center lines of platted streets in said ward.

"If the Council fails to make such subdivision within the time required, it shall then be made by the Director of Public Service.

"*Where no special provision is made in this Charter governing general, primary or special elections, registration and the conduct of such elections, the provisions of the general law of the State of Ohio shall control*." (Emphasis added.)

{¶ 15} R.C. 731.06, which addresses the subdivision of a city into wards by its legislative authority, provides:

"(F)  Action of the legislative authority to divide the city into wards shall be taken by ordinance and shall be effective for the first municipal primary election occurring at least one hundred fifty days after the passage of the ordinance."

{¶ 16} North Olmsted contends that the charter section prevails over R.C. 731.06 and provides that when the city redistricted the wards following the 2000 federal census, the redistricting became immediately effective for the next election, which is the November 6, 2001 general election.  The board counters that R.C. 731.06(F) applies and delays the effective date of the redistricting until the next municipal primary election.[1]

{¶ 17} In resolving this dispute, we are guided by the precept that "[m]unicipal charters must be construed to give effect to all separate provisions and to harmonize them with statutory provisions whenever possible."  *State ex rel. Fattlar v. Boyle* (1998), 83 Ohio St.3d 123, 127, 698 N.E.2d 987, 990.  In other words, "[i]n the absence of express language in a charter demonstrating a conflict with a statute, it is the duty of courts to harmonize the provisions of the charter and statutes relating to the same matter."  *State ex rel. Ryant Commt. v. Lorain Cty. Bd. of Elections* (1999), 86 Ohio St.3d 107, 112, 712 N.E.2d 696, 700.

---

1. North Olmsted claims that the board waited until after it filed this action to contend that it could not implement the new precincts before the November 6, 2001 general election because the redistricting had not been in effect before the city's May 2001 primary election.  But in its motion for a temporary restraining order, the city conceded that the board had raised this argument *before* the city filed this action.

**{¶ 18}** There is no express language in Section 7, Article IX of the North Olmsted Charter demonstrating a conflict with R.C. 731.06(F). To the contrary, Section 7 does not expressly state the effective date of redistricting for purposes of upcoming elections. At best, Section 7 merely lists general provisions concerning redistricting, and specifies that in the absence of special provisions in the charter, the general law of Ohio, which includes R.C. 731.06, controls. The "conduct of such elections" in Section 7, Article IX of the charter encompasses the question of when redistricting is effective for purposes of an election.

**{¶ 19}** Under R.C. 731.06(F), redistricting does not become effective until the "first municipal primary election occurring at least one hundred fifty days" after the city's legislative authority approves the redistricting. Consequently, where, as here, the city council did not approve redistricting until after the 2001 election cycle had already commenced with the May primary election, the redistricting could not become effective until after the November 6, 2001 general election. This result is mandated by the plain language of R.C. 731.06(F), as incorporated in Section 7, Article IX of the North Olmsted Charter.

**{¶ 20}** As we have previously observed, "boards of elections 'are the local authorities best equipped to gauge compliance with election laws.' " *Stevens*, 90 Ohio St.3d at 228, 736 N.E.2d at 886, quoting *State ex rel. Sinay v. Sodders* (1997), 80 Ohio St.3d 224, 231, 685 N.E.2d 754, 760. The Attorney General of Ohio has similarly concluded that R.C. 731.06 postpones the effective date of the redistricting. 1961 Ohio Atty.Gen.Ops. No. 2500, 561, paragraph three of the syllabus ("Where city wards are redistricted under the provisions of Section 731.06, Revised Code, after a primary election was held for the nomination of ward councilmen, such redistricting has no effect on the general election following such primary election and does not become effective until the next ensuing election of municipal officers").

**{¶ 21}** Other jurisdictions have commented on the wisdom of postponing the effective date of redistricting or reapportionment until after the general election. See, *e.g., Burkhart v. Sine* (1997), 200 W.Va. 328, 332, 489 S.E.2d 485, 489, fn. 1 ("we hope County Commissions in the future will refrain from redistricting county magisterial districts between the primary election and the general election. Ideally, redistricting should take place prior to the primary election or after the general election or during an off year, in which elections do not take place"); cf. *Butcher v. Bloom* (1966), 420 Pa. 305, 307-308, 216 A.2d 457, 458 ("We determined, however, that the imminence of the 1964 general election required the utilization of the apportionment plans contained in those acts, notwithstanding their invalidity, in order to prevent serious disruption of election processes and essential governmental functions").

**{¶ 22}** Finally, neither R.C. 3501.08, which involves the oath of office for board members, nor R.C. 3501.18(A), which provides boards of elections with discretionary authority to establish, define, divide, rearrange, and combine election precincts and change polling locations, requires a contrary result. These statutes do not impose any duty on the board to make North Olmsted's redistricting effective immediately for the upcoming November 6, 2001 general election. And the city's additional citation of R.C. 3501.11(A) in its reply brief also does not impose this duty on the board in contravention of R.C. 731.06. As the board persuasively argues, the city cites no pertinent authority for its suggestion that the board has a constitutional duty to change election precincts in the middle of an election cycle. To do so would challenge the constitutionality of R.C. 731.06, which the city does not specifically do.

**{¶ 23}** Based on the foregoing, the board neither abused its discretion nor clearly disregarded applicable law by postponing the effective date of its rearranging of the election precincts for North Olmsted until after the November 6, 2001 general election. Instead, the board fully complied with the applicable law in

so deciding. Accordingly, we deny the writ. By so holding, we also vacate the previously issued temporary restraining order.

*Writ denied.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

———————————

*Michael R. Gareau*, North Olmsted Director of Law, and *James M. Dubelko*, Assistant Director of Law; *Calfee, Halter & Griswold, L.L.P., Albert J. Lucas, Mark Belleville* and *Peter A. Rosato*, for relator.

*William D. Mason,* Cuyahoga County Prosecuting Attorney, and *Charles E. Hannan*, Assistant Prosecuting Attorney, for respondent.

———————————