RUST *v.* LUCAS COUNTY BOARD OF ELECTIONS.

[Cite as *Rust v. Lucas Cty. Bd. of Elections,*
108 Ohio St.3d 139, 2005-Ohio-5795.]

(No. 2005–1891—Submitted October 27, 2005—Decided November 2, 2005.)

Per Curiam.

{¶ 1} This is an expedited election case in which relator requests a writ of mandamus to compel a board of elections to certify him as a candidate for the board of education at the November 8, 2005 election.

{¶ 2} On August 23, 2005, relator, attorney John G. "Bull Dog" Rust, filed with respondent, Lucas County Board of Elections, his nominating petition, including his statement of candidacy, to be a candidate for the Toledo Board of Education.

{¶ 3} On September 8, 2005, the board of elections notified Rust that it had rejected his petition and refused to certify his candidacy. The board of elections rejected the petition because the number of signatures stated in each circulator's affidavit was less than the actual number of signatures on each part-petition, and the Secretary of State of Ohio had instructed boards of elections to invalidate such part-petitions.

{¶ 4} On September 16, 2005, Rust filed an expedited election case for a writ of mandamus to compel the board of elections to certify him as a candidate in the November 8, 2005 election for the Toledo Board of Education. The board of elections answered the complaint, but instead of filing his brief and evidence on the due date of September 26, Rust filed an application to dismiss his case. On

October 3, we granted Rust's application and dismissed the case. 106 Ohio St.3d 1525, 2005-Ohio-5223, 835 N.E.2d 376.

{¶ 5} On October 6, Rust filed this expedited election case seeking the same extraordinary relief that he had previously sought in his earlier case. The board of elections answered the complaint, and the parties filed evidence and merit briefs pursuant to the expedited election schedule in S.Ct.Prac.R. X(9).

{¶ 6} This cause is now before us for our consideration of the merits.

## Mandamus

{¶ 7} In order to be entitled to the requested writ of mandamus, Rust must establish a clear legal right to certification of his candidacy on the November 8 election ballot, a corresponding clear legal duty on the part of the board of elections to certify his candidacy, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Commt. for the Proposed Ordinance to Repeal Ordinance No. 146–02, W. End Blight Designation v. Lakewood,* 100 Ohio St.3d 252, 2003-Ohio-5771, 798 N.E.2d 362, ¶ 12.

{¶ 8} To establish the requisite legal right and legal duty, Rust must prove that the board of elections engaged in fraud, corruption, abuse of discretion, or clear disregard of statutes or other pertinent law. *State ex rel. N. Olmsted v. Cuyahoga Cty. Bd. of Elections* (2001), 93 Ohio St.3d 529, 532, 757 N.E.2d 314. Rust claims that the board of elections abused its discretion and clearly disregarded pertinent law by invalidating his part-petitions because the circulator statements specified the number of signatures to be less than the number actually contained on the petition.

{¶ 9} Rust's claim lacks merit. R.C. 3501.38(E)(1) requires circulators to indicate the number of signatures contained on the part-petitions they circulated:

{¶ 10} *"On each petition paper, the circulator shall indicate the number of signatures contained on it,* and shall sign a statement made under penalty of election falsification that the circulator witnessed the affixing of every signature, that all signers were to the best of the circulator's knowledge and belief qualified to sign, and that every signature is to the best of the circulator's knowledge and belief the signature of the person whose signature it purports to be." (Emphasis added.)

{¶ 11} Rust's part-petitions did not comply with R.C. 3501.38(E)(1), because the circulators' statements specified numbers less than the actual numbers of signatures contained on the part-petitions. The purpose of this requirement is to protect against signatures being added after the circulator's statement is made. See *State ex rel. Citizens for Responsible Taxation v. Scioto Cty. Bd. of Elections* (1992), 65 Ohio St.3d 167, 172, 602 N.E.2d 615, quoting *State ex rel. Loss v. Lucas Cty. Bd. of Elections* (1972), 29 Ohio St.2d 233, 234, 58 O.O.2d 488, 281 N.E.2d

186. In *Loss,* we analyzed a comparable provision in R.C. 3513.07 and found that the requirement that the circulator indicate the number of signatures contained on the part-petition is a " 'substantial, reasonable requirement.' " *Citizens for Responsible Taxation,* 65 Ohio St.3d at 172, 602 N.E.2d 615, quoting *Loss* at 234, 58 O.O.2d 488, 281 N.E.2d 186.

{¶ 12} The parties agree that the Secretary of State, the state's chief election officer, has instructed boards of elections that R.C. 3501.38 requires that if the number indicated by the circulator is less than the actual number of signatures, the entire part-petition must be invalidated. See *Citizens for Responsible Taxation,* 65 Ohio St.3d at 172, 602 N.E.2d 615 ("*Loss* implies that arithmetic error will be tolerated, but only if the error does not promote fraud. Indeed, *Loss* may explain why the Secretary of State instructed respondents here to reject an entire part-petition only where the circulator states a number *'less* than the total number of *uncrossed out* signatures' (emphasis *sic* ) and to, in effect, overlook discrepancies in the number of signatures 'in all other instances' ").

{¶ 13} The board did not err in relying on the Secretary of State's interpretation of R.C. 3501.38 to invalidate Rust's petition. See *Whitman v. Hamilton Cty. Bd. of Elections,* 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 22 ("acknowledging this court's duty to defer to the Secretary of State's interpretation of election law if it is subject to two different, but equally reasonable, interpretations").

{¶ 14} Rust claims that the reason the circulators' statements specified a number of signatures less than the number of signatures contained on the part-petitions was that he had realized that an unqualified person had signed the part-petitions and he did not want to violate the R.C. 3501.38(E)(1) requirement that "all signers were to the best of the circulator's knowledge and belief qualified to sign." But Rust could have complied with all of the requirements of R.C. 3501.38(E)(1) by striking the signatures of persons he had discovered to be unqualified before submitting the petition to the board of elections. See R.C. 3501.38(G) ("The circulator of a petition may, before filing it in a public office, strike from it any signature the circulator does not wish to present as part of the petition"); *State ex rel. Oster v. Lorain Cty. Bd. of Elections* (2001), 93 Ohio St.3d 480, 484, 756 N.E.2d 649. Thus, Rust was not left without any remedy when he discovered, before filing the petition, that an unqualified person had signed it.

{¶ 15} Moreover, Rust's claim is also barred by laches. "Relators in election cases must exercise the utmost diligence." *State ex rel. Fuller v. Medina Cty. Bd. of Elections,* 97 Ohio St.3d 221, 2002-Ohio-5922, 778 N.E.2d 37, ¶ 7. " 'If relators do not act with the required promptness, laches may bar the action for extraordinary relief in an election-related matter.' " *State ex rel. Miller v. Cuyahoga Cty. Bd. of Elections,* 103 Ohio St.3d 477, 2004-Ohio-5532, 817 N.E.2d

1, ¶ 21, quoting *State ex rel. Steele v. Morrissey,* 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 12. Rust failed to act with the requisite diligence by waiting 28 days from the September 8 notification date of the board's rejection of his candidacy to file this expedited election case challenging the board's decision. By the time this case was filed, the statutory deadline to have absentee ballots printed and ready for use had already passed. R.C. 3509.01. Rust's first election case on this issue was filed in a more timely fashion—on September 16—but Rust inexplicably dismissed the case instead of proceeding with it. Rust has introduced no evidence justifying this prejudicial, dilatory conduct.

{¶ 16} Finally, Rust did not comply with R.C. 2731.04, which requires that an action for a writ of mandamus "be * * * in the name of the state on the relation of the person applying." Rust did not bring this action in the name of the state. "If * * * a respondent in a mandamus action raises this R.C. 2731.04 defect and relators fail to seek leave to amend their complaint to comply with R.C. 2731.04, the mandamus action must be dismissed." *Blankenship v. Blackwell,* 103 Ohio St.3d 567, 2004-Ohio-5596, 817 N.E.2d 382, ¶ 36; *Litigaide, Inc. v. Lakewood Police Dept. Custodian of Records* (1996), 75 Ohio St.3d 508, 664 N.E.2d 521. The board of elections raised this defect in its October 17 response as well as its October 24 merit brief. Nevertheless, as of October 27, the date that his final brief was filed, Rust had failed to seek leave to amend his complaint to comply with R.C. 2731.04. Cf. *State ex rel. Rust v. Lucas Cty. Bd. of Elections,* 100 Ohio St.3d 214, 2003-Ohio-5643, 797 N.E.2d 1254, ¶ 6, in which Rust timely moved for leave to amend his case caption when the board raised this same objection in a previous expedited election case.

{¶ 17} Based on the foregoing, we hold that the board of elections neither abused its discretion nor clearly disregarded applicable election law by invalidating Rust's petition and refusing to certify his candidacy. Therefore, Rust is not entitled to the requested extraordinary relief in mandamus. Accordingly, we deny the writ.

Writ denied.

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

PFEIFER, J., concurs in judgment only.

---

**PFEIFER, J., concurring in judgment only.**

{¶ 18} I am not a proponent of relying on laches to decide election cases, but too late is too late. The relator is too late—he should not have abandoned his earlier request for a writ of mandamus.

{¶ 19} I would have been inclined to grant relator's writ. The Secretary of State's rule to invalidate part-petitions when the circulator attests that the number of signatures is less than the actual number of signatures on the part-petition is not required by R.C. 3501.38 or 3501.39. The enforcement of the rule is especially troublesome since petitions overstating the number of signatures are not automatically rejected. To avoid the allegedly feared problem of signatures being added after the circulator's statement is made, boards of election should count only the number of signatures that the circulator has represented that the petition contains. That is a policy that may not be as draconian as the Secretary of State might like, but it at least makes sense and is fair.

---

John G. Rust, pro se.

Julia R. Bates, Lucas County Prosecuting Attorney, and John A. Borell, Assistant Prosecuting Attorney, for respondent.